Jasen, J.
The crucial question raised on this appeal is whether a police officer’s suspicion of criminal activity justifies stopping a motor vehicle for an investigative check.
On the evening of September 24, 1971, New York City Officers Santiago and Braga were assigned to a taxi and truck surveillance unit. At about 8:00 p.m., they stopped a 1963 or 1965 blue Buick Riviera with Queens County license plates on Morningside Drive and 122nd Street. Two black men were in the car. Following a check of the license and registration, the car was permitted to proceed. At about 10:00 p.m., the officers saw a 1963 or 1965 blue Buick Riviera approaching the Triborough Bridge. This car, which appeared to the officers to be identical to the first car, had Brooklyn license plates and three black male occupants. As a result of seeing two apparently identical cars within two hours with different plates, the officers stopped the second car. The occupants exited from the vehicle. Upon examining the driver’s license and registration, the officers ascertained that the car did not belong to him. Hence, Officer Braga proceeded to check the VIN plate on the hinge of the driver’s front door. While Braga was in a crouched position searching for the VIN plate, Officer Santiago observed the back seat passenger approach the open door and reach over his partner’s shoulder into the car. Santiago, believing that there might be a gun in the car, grabbed the man and shined his flashlight inside the car. An open manila envelope containing a visible white powder was resting on the console. Santiago testified that he had made about 80 prior arrests involving cocaine and heroin and, based on his experience, he believed the white powder to be cocaine. All three occupants of the car, including the defendant, were arrested, and a further search revealed another identical envelope, containing white powder, between the driver’s seat and the console.
Defendant, as well as the other occupants of the car, were subsequently indicted for criminal possession of a dangerous drug in the fourth degree. (Penal Law, § 220.15.) After a hearing on defendant’s suppression motion, the court, apparently assuming that the officers had an unqualified right to stop the automobile, found the officer’s testimony credible and *404 concluded that there were reasonable grounds to look inside the automobile prior to the discovery of the drugs. After a jury trial, defendant was convicted of the crime charged in the indictment. The Appellate Division affirmed the judgment of conviction.
Relying on the rationale of Terry v Ohio (392 US 1) and our recent decision in People v Ingle (36 NY2d 413), defendant argues that the action of the police officer in stopping the automobile in which he was a passenger "was unjustified in its inception and violated [his] Fourth Amendment rights.”
In People v Ingle (supra), the court examined the limitations upon the power of the police to stop a motor vehicle on the public highway. The issue before the court was whether the police may stop an automobile solely because of unusual appearance, to examine the motorist’s license and registration, or to inspect the vehicle for possible equipment violations. We held that a motor vehicle on a public highway may be stopped only where the officer has specific cause or reasonable suspicion of a violation of law or in accordance with nonarbitrary, nondiscriminatory, uniform procedures, such as at roadblocks, checkpoints and weighing stations. We specifically prohibited stops that are "the product of mere whim, caprice or idle curiosity.” (36 NY2d, at p 420.) As to permissible stops for specific cause or reasonable suspicion, we said it was "enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion’ (Terry v Ohio, 393 US 1, 21, supra). ”(36 NY2d, at p 420.)
We believe that the action of the police in stopping the motor vehicle in which the defendant was a passenger was permissible. Officer Santiago testified that the second car was stopped solely because it appeared to be the identical car he had seen earlier that evening with different license plates. Thus, the police stopped the car because of what they observed. The officer’s suspicion that the vehicle was stolen or that it had been involved in other criminal activity justified the stop for an investigative check of the operator’s license and registration. This was not a routine traffic stop, nor was it based on the sort of random and arbitrary stop that Ingle was designed to prohibit. Under these circumstances, it was reasonable for the police to believe that the driver and occupants of the car were involved in some criminal activity which made investigation appropriate. The State’s interest in crime detec *405 tion supports a stop predicated on reasonable suspicion of criminal activity. Hence, this stop was permissible and the evidence obtained as a result of the stop was properly admitted at the trial.
One other issue remains. Defendant argues that the trial court’s refusal to grant him an adjournment to secure the presence of a vital witness violated his constitutional right to compulsory process and constituted an abuse of discretion as a matter of law. A granting of an adjournment for any purpose is a matter of discretion for the trial court. (People v Oskroba, 305 NY 113, 117.) A review of the facts and circumstances of this case leads to the conclusion that the trial court did not abuse its discretion, as a matter of law, in refusing to grant defendant a fourth adjournment.
The relevant facts can be briefly stated. The prosecution concluded its case on August 27, 1973. Two potential witnesses who had been arrested with the defendant were subpoenaed by the defense for appearance on the same date, but failed to appear in court. The Trial Justice granted the defendant a 24-hour adjournment in order to bring his two witnesses to court. That evening, one of the potential witnesses, David Knowles, was contacted by members of defendant’s family and assured them that he would appear in court the following morning. Nevertheless, the witness failed to appear and the court adjourned the trial a second time, directing that material witness orders be served on the missing witnesses. That same evening the witness Knowles was arrested and detained. Due to a misunderstanding as to the validity of the material witness order, the police released the witness. The following morning the court was informed of what had occurred and adjourned the trial for a third time to give the defendant another, but brief, opportunity to bring in the witness. Later that afternoon, when the defendant failed to produce the witness, the court denied a request for a fourth adjournment. Under these circumstances, it cannot be said, as a matter of law, that the court abused its limited discretion. Our holding in People v Foy (32 NY2d 473), upon which the dissent relies, is instructive. In Foy, the defense announced to the jury that it would present alibi witnesses who would testify that the defendant was actually in his apartment at the time of the incident. One of these witnesses, a truck driver, took a day off from work in order to be present in the courtroom. Yet the prosecutor’s case spilled over onto the next day and the driver *406 apparently found justice not worth the cost of an additional day’s pay. He refused to honor a subpoena and an attempt to serve the second alibi witness was unsuccessful. The Trial Justice denied a request for an adjournment, holding counsel to a promise to complete the trial in time for the court to proceed to another judicial assignment. (32 NY2d, at p 475.) We held it to be error to deny a "short” adjournment for the purpose of obtaining a material witness where the witness had been identified to the court, could be found within the jurisdiction, and the movant demonstrated some diligence and good faith. (32 NY2d, at p 478.)
In Foy, the trial court refused, for its own convenience, to grant even the briefest of adjournments. The court here was most co-operative and accommodating. The difference is like night and day. Even though the court had previously adjourned the case on two prior occasions, the court granted the defendant a third short adjournment. When a fourth adjournment was requested, it was hardly an abuse of discretion for the court to direct counsel to try the case and not the court’s patience. Consequently, the court’s refusal to grant the additional adjournment cannot be described as an abuse of its limited discretion, as a matter of law. It should also be mentioned that, unlike Foy, defendant himself was instrumental in bringing about the unavailability of the requested witnesses at his trial. His failure to appear resulted in a bench warrant being issued. It was not vacated until February 23, 1973. During this period, both of the potential witnesses whom defendant contends he desired at his trial were readily available since both witnesses had matters pending before the court while defendant was evading justice. Thus, the defendant, by absconding from the jurisdiction of the court, brought about his difficulties in not being able to locate the witnesses at the time of the delayed trial. Certainly, the People did not intentionally cause the witnesses’ unavailability, nor delay the trial for more than a year. (People v Fowler, 46 AD2d 838, affd 37 NY2d 100.)
There is also some doubt as to the needfulness of the potential witnesses’ testimony since the defendant’s attorney informed the court that he did not have the "foggiest idea” of whether the testimony would help or hurt the defendant. We believe that, under these circumstances, the defendant should not be allowed to manipulate the Sixth Amendment to avoid due process of law.
*407 Only a few words need be said in reference to the dissent. Foy did not hold that all requests for an adjournment are to be treated alike, without due regard for the surrounding factual circumstances. The three-point test to which the dissent alludes was eschewed in Foy in favor of a less mechanical and rigid rule. Although Foy requires that a trial court be duly receptive to a request for a "short adjournment” and defendant here received that much and more, the dissent would hold that a trial could not proceed if, after defendant absconds the jurisdiction, he complains about the loss of witnesses. Foy hardly fits this case like a glove, much less does it lace a straitjacket over a responsible exercise of discretion.
Accordingly, the order of the Appellate Division should be affirmed.